In The United States Court of federal Claims

FILED
CLERK, U.S. DISTRICT COURT

OCT 3 1 2019

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Ryan McCoy )

**PLAINTIFF**   CASE NO.

GV19-9387-CAS (GJSx)

**VS** )   **COMPLAINT FOR**

**DAMAGES**

Michael Noak )

Jessica Casey & )

Juliet Smalls )

**DEFENDANTS** )

## COMPLAINT ABOUT FRAUD, MISREPRESENTATION

NOW COME plaintiff Ryan McCoy by and through their attorney, complaining of Defendants, respectfully allege as follows:

### GENERAL ELEGATIONS:

RECEIVED
10-30-19

1. **Plaintiff Ryan McCoy** ("Plaintiff"), at all relevant times mentioned herein and currently, resides in the County of Los Angeles, State of California and he is suing under fraudulent and misrepresentation act.

2. **Plaintiff Ryan McCoy** is informed and believes, and based thereon alleges that Defendant is who at all relevant times mentioned herein and currently, resides in the County of Los Angeles, State of California, and who caused injuries and damages to the Plaintiff in the County of Los Angeles, State of California.

3. **Plaintiff Ryan McCoy** is informed and believes, and based thereon alleges that **Defendants Michael Noak & Jessica Casey & Juliet Smalls** who at

1 of 17

all relevant times mentioned herein and currently, resides in the County of Los Angeles, State of California, and who caused injuries and damages to the Plaintiff in the County of Los Angeles, State of California.

4. Venue properly lies in this county in that all Defendants reside in this county and that the conduct described herein was committed in this county.

5. All defendant's names and capacities, whether individual, corporate, partnership, associate or otherwise, of Defendants sued herein as Michael Noak & Jessica Casey & Juliet Smalls 1 through **Ryan McCoy,** inclusive, are currently unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a Michael Noak & Jessica Casey & Juliet Smalls are legally responsible in some manner for the events and happenings referred to herein, and caused injury and damage proximately thereby to Plaintiff as hereinafter alleged. Plaintiff will seek leave of court to amend this Complaint to show the all defendant's names and capacities of the Defendants designated herein as Michael Noak & Jessica Casey & Juliet Smalls, Whenever in this complaint reference is made to "Defendants," such allegation shall be deemed to mean the acts of Defendants acting individually, jointly, and severally.

6. Except as hereinafter specifically described, Defendants and each of them, are and were the co-conspirators, aiders, abettors, agents, and employees of the other Defendants, and in acting as described herein were acting within the conspiracy or the scope of their authority or employment as agents and employees thereof, and with the permission and consent of the other Defendants.

7. This case arises out of injuries suffered by Plaintiff Ryan McCoy after he defrauded by the defendants and scammed out of roughly $110K from **defendant Michael Eugene Noak aka Brother Polight, and his 1st wife Juliet Natoya Small aka Amunette and his 2nd wife Jessica Casey aka Ra-et.**

8. **Plaintiff Ryan McCoy** invested his father insurance money in brother polight financial mentorship for nine streams of income plus a real estate trust also known as the "celebrity " mentorships which he claims to give to P. Diddy, Serena Williams, Floyd Mayweather. Etc.

9. **Plaintiff Ryan McCoy** received the money from his father life insurance and want to settle his life, build his own house (because he has suffered a lot due to loneliness and homelessness) for better future.

10. **Plaintiff Ryan McCoy** was not aware with fraudulent acts that why the defendant **Michael Noak & Jessica Casey & Juliet Smalls** and his family scammed him and took great advantage of his innocence, ignorance and loneliness.

11. **Plaintiff Ryan McCoy** lived with them 3 months and the defendants **Michael Noak & Jessica Casey & Juliet Smalls** and his family used his money for their luxuries life style, food, clothes, his music productions.

12. **Plaintiff Ryan McCoy** invested all his money with good faith, but all the defendants were using him for their comfort.

13. **Plaintiff Ryan McCoy** trusted the defendant because he promised that he will give him a fair amount after investing money. **(All the evidences will be provided)**

14. **Plaintiff Ryan McCoy** tried to signing the papers for investment but the defendant **Michael Noak & Jessica Casey & Juliet Smalls** didn't do this because he was using him by the plan.

15. **Plaintiff Ryan McCoy** asked the defendant about the invested money and his shares as per promised but the defendant didn't give him a positive response. After using plaintiffs' money the defendant kicked him out with empty pockets.

16. **Plaintiff Ryan McCoy** was not a well-established person. He was homeless and used to live alone, so the defendant took advantage of his weak points and used plaintiffs' father's insurance for his benefits. Defendants **Michael Noak & Jessica Casey & Juliet Smalls** promised to the plaintiff that he would give him a fair share, but he scammed and kicked him out fraudulently.

17. **Defendant Ryan McCoy** give the plaintiff emotional and mental stress throughout the time-period because defendant didn't sign a contract and forced the plaintiff to trust him.

18. **Plaintiff Ryan McCoy** believed his fake promises and consoling behavior. After all the fraudulent, now plaintiff has no money to survive.

### 19. FIRST CAUSE OF ACTION:

20. **Fraud, misrepresentation under code of civil procedure § 338, 33 U.S. Code § 931. Penalty for misrepresentation**

21. **Plaintiff Ryan McCoy** invested his money with the defendant in his business with good faith because he wanted to build up his career and settled future family life, but the defendant scammed him and used his money with his wives for their comfort through luxuries living style, expensive clothes, dinners, gas bills and luxuries cars rents.

(a) Felony; fine; imprisonment

    (1) Any claimant or representative of a claimant who knowingly and willfully makes a false statement or representation for obtaining a benefit or payment under this chapter shall be guilty of a felony, and on conviction thereof shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both.

    (2) The United States attorney for the district in which the injury is alleged to have occurred shall make every reasonable effort to promptly investigate each complaint made under this subsection.

(b) List of persons disqualified from representing claimants

    (1) No representation fee of a claimant's representative shall be approved by the deputy commissioner, an administrative law judge, the Board, or a court pursuant to section 928 of this title, if the claimant's representative is on the list of individuals who are disqualified from representing claimants under this chapter maintained by the Secretary pursuant to paragraph (2) of this subsection.

    (2)

        (A) The Secretary shall annually prepare a list of those individuals in each compensation district who have represented claimants for a fee in cases under this chapter and who are not authorized to represent claimants. The names of individuals contained on the list required under this subparagraph shall be made available to employees and employers in each compensation district through posting and in such other forms as the Secretary may prescribe.

        (B) Individuals shall be included on the list of those not authorized to represent claimants under this chapter if the Secretary determines under this section, in accordance with the procedure provided in subsection (j) of section 907 of this title, that such individual—

            (i) has been convicted (without regard to pending appeal) of any crime in connection with the representation of a claimant under this chapter or any workers' compensation statute;

            (ii) has engaged in fraud in connection with the presentation of a claim under this or any workers' compensation statute, including, but not

limited to, knowingly making false representations, concealing or attempting to conceal material facts with respect to a claim, or soliciting or otherwise procuring false testimony;

(iii) has been prohibited from representing claimants before any other workers' compensation agency for reasons of professional misconduct which are similar in nature to those which would be grounds for disqualification under this paragraph; or

(iv) has accepted fees for representing claimants under this chapter which were not approved, or which were in excess of the amount approved pursuant to section 928 of this title.

(C) Notwithstanding subparagraph (B), no individual who is on the list required to be maintained by the Secretary pursuant to this section shall be prohibited from presenting his or her claim or from representing without fee, a claimant who is a spouse, mother, father, sister, brother, or child of such individual.

(D) A determination under subparagraph (A) shall remain in effect for not less than three years and until the Secretary finds and gives notice to the public that there is reasonable assurance that the basis for the determination will not reoccur.

(2) No employee shall be liable to pay a representation fee to any representative whose fee has been disallowed by reason of the operation of this paragraph.

(3) The Secretary shall issue such rules and regulations as are necessary to carry out this section.

(c) False statements or representation to reduce, deny, or terminate benefits

A person including, but not limited to, an employer, his duly authorized agent, or an employee of an insurance carrier who knowingly and willfully makes a false statement or representation for the purpose of reducing, denying, or terminating benefits to an injured employee, or his dependents pursuant to section 909 of this title if the injury results in death, shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both.

**(Mar. 4, 1927, ch. 509, § 31, 44 Stat. 1439; Pub. L. 98–426, § 19, Sept. 28, 1984, 98 Stat. 1650.)**

**Facts:**

Under Code of Civil Procedure § 338, a defrauded person has 3 years–after the occurrence of the fraud–to file a civil action against the defrauding party; otherwise, the defrauded person will be barred from any recovery under California's statute of limitations.

Nonetheless, California law has an exception to the 3-year rule, known as delayed discovery rule. Under this exception,

The injured party may bring an action based on fraud or mistake more than 3 years after the transaction if the party is able to show that he or she did not discover the facts, and

5 of 17

could not with reasonable diligence have discovered them, prior to 3 years before the action. (5 Witkin, Cal. Proc. 5th (2008) Plead, § 929, p. 344.)

Furthermore, the defrauded party has "the burden of . . . proving that [he or she] did not make the discovery until within three years prior to the filing of [the] complaint." (Samuels v. Mix (1999) 22 Cal.4th 1, 14 [internal citation omitted].) "[I]t is blackletter law that the statute of limitations commences to run after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." (Sun'n Sand, Inc. v. United California Bank (1978) 21 Cal.3d 671, 701.)

Moreover, a plaintiff need not be aware of the specific 'facts' necessary to establish the claim. (Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1111-1112; see also Fox v. Ethicon Endo–Surgery, Inc. (2005) 35 Cal.4th 797, 807, ["[W]e looks to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."]) Instead, a plaintiff must show that, once on notice, he or she "took adequate steps then to investigate the matter." (Jolly v. Eli Lilly & Co., supra, 44 Cal.3d at p. 1112.) "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." (Id., at pp. 1111-1112.) "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (Id.) Moreover, subjective suspicion is not required. (Mangini v. Aerojet-General Corp. (1991) 230 Cal. App.3d 1125, 1150.)

Therefore, the day the defrauded party has "reasonable cause to suspect wrongdoing" is when the 3year mark begins, regardless of whether he or she knew the "particulars" of the fraud claim. (Kline v. Turner (2001) 87 Cal.App.4th 1369, 1374.) Also, "ignorance concerning the specific causes of action arising from the wrong" is not a defense. (Id.) Thus, "rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [Courts] look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (Cypress Semiconductor Corp. v. Superior Court (2008) 163 Cal.App.4th 575, 586.) Wrong and wrongdoing in this context are understood in their lay and not legal senses. (Id.)

Miller v. Bechtel Corp. (1983) 33 Cal.3d 868, the California Supreme Court held that plaintiff's fraud claim was timed barred, even though she filed suit soon after she "discovered" facts establishing that her former husband had concealed the true worth of his assets during dissolution negotiations. (Id.) When the plaintiff was signing the dissolution agreement, the plaintiff and her attorney had doubts as to the actual value of her husband's stock. (Id. at p. 875.) More than three years after plaintiff's doubts, when the stock was sold for an amount well beyond that stated during the dissolution discussions, plaintiff asserted a claim for fraud, claiming delayed discovery. (Id. at pp. 871-872.) The Court held that plaintiff's early suspicion and doubt put her on inquiry

notice of the potential wrongdoing, thus beginning the statute of limitations and barring the action. (Id. at p. 875.)

What is more, in Norgart v. Upjohn Co. (1999) 87 Cal.Rptr.2d 453, 461-462 the California Supreme Court explained the rationale of the statute of limitations as follows:

The statute of limitation has as a purpose to protect defendants from the stale claims of dilatory plaintiffs. It has as a related purpose to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion. Inasmuch as it "necessarily fix[es]" a "definite period of time", it operates conclusively across the board, and not flexibly on a case-by-case basis. That is to say, a cause of action brought by a plaintiff within the limitations period applicable thereto is not barred, even if, in fact, the former is stale and the latter dilatory; contrariwise, a cause of action brought by a plaintiff outside such period is barred, even if, in fact, the former is fresh and the latter diligent. The statute of limitations operates in an action as an affirmative defense. Most often, the affirmative defense based on the statute of limitations has been approved by courts as "favored". That is because, in accord with "public policy", it "promote[s] repose by giving security and stability to human affairs." (Norgart v. Upjohn Co., supra, 87 Cal.Rptr.2d at pp. 461-462 [internal citations omitted].)

**The Various Types of Fraud Actions in California**
In California, there are several different types of fraud actions, each representing a unique situation.
A skilled fraud attorney must be able to accurately identify the theory of fraud under which the plaintiff should sue for the greatest chance of successful resolution.

**Requirements of Intentional Misrepresentation**
Intentional misrepresentation occurs when the at-fault party intentionally convinces the victim to rely on false facts, which the victim then relies on and is damaged by.
Intentional misrepresentation requires the following:
- The false statement must have been a false statement of fact, not opinion.  "Puffery" – grandiose embellishment in the form of an opinion about one's own skills – is allowable. For example, a salesman is allowed to brag about his store, even if he is exaggerating its good qualities.
- There was intent to defraud with the false statements.
- The victim relied on the false statement, in significant part, and such reliance was reasonable.  If the victim knew or should have known that the statement was false, then the victim's reliance on the false statement was not reasonable.  This can be very fact specific, as what a victim is expected to know depends on their skillset and knowledge. A skilled fraud attorney will attempt to downplay their client's skillset and knowledge so that reliance on the false facts is seen as reasonable.

- The victim suffered damages as a result of the fraud.

## Negligent Misrepresentation

Negligent misrepresentation, otherwise known as constructive fraud, is similar to intentional misrepresentation, except that, when the at-fault party convinces the victim to rely on false facts, it is not done so intentionally.  The at-fault party may have believed that the false statement was true, but the important thing to remember about negligent misrepresentation is that, despite making a false statement without any intent to defraud the victim, the at-fault party should have known that the victim would rely on the false statement, and further, should have known that there were no reasonable grounds for believing that the statement was true.

It is easier for the victim to succeed under a theory of negligent misrepresentation as opposed to intentional misrepresentation, as the victim need only prove that the defendant did not have a reasonable basis to believe that the relied-upon statement of fact was true.

## Concealment

Concealment fraud requires the existence of a relationship between two or more parties in which disclosure is required (i.e., an accountant and his manager, the trustee of an estate and the eventual heirs).  Because the relationship demands full disclosure, any attempt to conceal facts or otherwise prevent disclosure therefore constitutes fraud.

## Concealment fraud requires the following:

- Defendant had a duty to disclose certain facts, but did not.  Importantly, a defendant can have satisfied this element of concealment if he or she discloses only selective information that is intended to mislead the victim.
- Defendant failed to disclose certain material facts.
- In failing to disclose those facts, defendant intended to defraud the victim.
- The victim cannot have been aware of the concealed fact.
- The victim suffered damages as a result of their reliance on the concealed fact(s).

## False Promise

False promise fraud, otherwise known as promissory fraud, involves a contract in which the at-fault party makes a promise that he or she does not intend to fulfill.  In making a promise to the victim, the at-fault party attempts to induce the victim to rely upon the promise.

## False promise fraud requires the following:

- A promise was made that is relevant to the contract.
- Defendant did not intend to fulfill the promise at the time it was made.
- Defendant intended that the victim would rely on the promise, and the victim did, in fact, reasonably rely on the promise.

- The defendant did not fulfill the promise.
- The victim suffered damages as a result of their reliance on the false promise.

## 22. SECOND CASE OF ACTION:
### Breach of the contract and damages sec 3300 US civil code

23. **Defendant Michael Noak & Jessica Casey & Juliet Smalls** promised with the plaintiff in verbal agreement that he will give him a fair share after investment, but he didn't fulfill his promise, so the defendant is a liable breach of the contract according to the laws.

**CIVIL CODE - CIV**

**DIVISION 4. GENERAL PROVISIONS [3274 - 9566] ( Heading of Division 4 amended by Stats. 1988, Ch. 160, Sec. 16. )**

**PART 1. RELIEF [3274 - 3428] ( Part 1 enacted 1872. )**

**TITLE 2. COMPENSATORY RELIEF [3281 - 3360] ( Title 2 enacted 1872. )**

**CHAPTER 2. Measure of Damages [[3300.] - 3360] ( Chapter 2 enacted 1872. )**

**ARTICLE 1. Damages for Breach of Contract [[3300.] - 3322] ( Article 1 enacted 1872. )**

[3300.]   Section Thirty-three Hundred. For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

(Amended by Code Amendments 1873-74, Ch. 612.)

3301. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.

(Enacted 1872.)

3302. The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.

(Enacted 1872.)

3304. The detriment caused by the breach of a covenant of "seizin," of "right to convey," of "warranty," or of "quiet enjoyment," in a grant of an estate in real property, is deemed to be:

The price paid to the grantor; or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property;

Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years;

Any expenses properly incurred by the covenantee in defending his possession.

(Enacted 1872.)

**3305.** The detriment caused by the breach of a covenant against incumbrances in a grant of an estate in real property is deemed to be the amount which has been actually expended by the covenantee in extinguishing either the principal or interest thereof, not exceeding in the former case a proportion of the price paid to the grantor equivalent to the relative value at the time of the grant of the property affected by the breach, as compared with the whole, or, in the latter case, interest on a like amount.

(Enacted 1872.)

**3306.** The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest.

(Amended by Stats. 1983, Ch. 262, Sec. 1.)


**3306a.** The minimum detriment caused by the breach of an agreement to execute and deliver a quitclaim deed to real property is deemed to be the expenses incurred by the promisee in quieting title to such property, and the expenses incidental to the entry upon such property. Such expenses which shall include reasonable attorneys' fees shall be fixed by the court in the quiet title action.

(Added by Stats. 1935, Ch. 661.)

**3307.** The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest.

(Amended by Stats. 1983, Ch. 262, Sec. 2.)

**3308.** The parties to any lease of real or personal property may agree therein that if the lease shall be terminated by the lessor by reason of any breach thereof by the lessee, the lessor shall thereupon be entitled to recover from the lessee the worth at the time of the termination, of the excess, if any, of the amount of rent and charges equivalent to rent reserved in the lease for the balance of the stated term or any shorter period of time over the then reasonable rental value of the property for the same period.

The rights of the lessor under the agreement shall be cumulative to all other rights or remedies now or hereafter given to the lessor by law or by the terms of the lease; provided, however, that the election of the lessor to exercise the remedy hereinabove permitted shall be binding upon him or her and exclude recourse thereafter to any other remedy for rental or charges equivalent to rental or damages for breach of the covenant to pay the rent or charges accruing subsequent to the time of the termination. The parties to the lease may further agree therein that unless the remedy provided by this section is exercised by the lessor within a specified time the right thereto shall be barred.

This section does not apply to a lease of real property unless (a) the lease was executed before July 1, 1971, or (b) the terms of the lease were fixed by a lease, option, or other agreement executed before July 1, 1971.

This section does not apply to leases subject to Division 10 (commencing with Section 10101) of the Commercial Code.

(Amended by Stats. 1988, Ch. 1368, Sec. 2. Operative January 1, 1990, by Sec. 18 of Ch. 1368.)

**3315.** The detriment caused by the breach of a carrier's obligation to accept freight, messages, or passengers, is deemed to be the difference between the amount which he had a right to charge for the carriage and the amount which it would be necessary to pay for the same service when it ought to be performed.

(Enacted 1872.)

**3316.** The detriment caused by the breach of a carrier's obligation to deliver freight, where he has not converted it to his own use, is deemed to be the value thereof at the place and on the day at which it should have been delivered, deducting the freightage to which he would have been entitled if he had completed the delivery.

(Enacted 1872.)

**3317.** The detriment caused by a carrier's delay in the delivery of freight, is deemed to be the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in

accordance with the contract. If the public agency disputes in good faith any portion of the amount due, it may withhold from the payment an amount not to exceed 150 percent of the disputed amount. The disputed amount withheld is not subject to any penalty authorized by this section.

(b) If any amount is wrongfully withheld or is not timely paid in violation of this section, the prime design professional shall be entitled to a penalty of 1 1/2 percent for the improperly withheld amount, in lieu of any interest otherwise due, per month for every month that payment is not made. In any action for the collection of amounts withheld in violation of this section, the prevailing party is entitled to his or her reasonable attorney's fees and costs.

The penalty described in subdivision (b) is separate from, and in addition to, the design professional's liens provided by Chapter 3 (commencing with Section 8300) of Title 2 of Part 6 of Division 4, mechanics liens provided by Chapter 4 (commencing with Section 8400) of Title 2 of Part 6 of Division 4, and stop payment notices on public works provided by Chapter 4 (commencing with Section 9350) of Title 3 of Part 6 of Division 4.

This section does not apply to state agency contracts subject to Section 927.6 of the Government Code.

None of the rights or obligations created by this section between prime design professionals and public agencies apply to construction loan funds held by a lender pursuant to a construction loan agreement.

For purposes of this section:

"Public agency" means the state, any county, any city, any city and county, any district, any public authority, any public agency, any municipal corporation, or other political subdivision or political corporation of the state.

"Design professional" means a person licensed as an architect pursuant to Chapter 3 (commencing with Section 5500) of Division 3 of the Business and Professions Code, registered as a professional engineer pursuant to Chapter 7 (commencing with Section 6700) of Division 3 of the Business and Professions Code, or licensed as a land surveyor pursuant to Chapter 15 (commencing with Section 8700) of Division 3 of the Business and Professions Code.

"Prime design professional" means a design professional with a written contract directly with the public agency.

(Amended by Stats. 2010, Ch. 697, Sec. 18. (SB 189) Effective January 1, 2011. Operative July 1, 2012, by Sec. 105 of Ch. 697.)

**3321.** (a) In each contract for public works of improvement, a prime design professional shall pay to each sub consultant design professional the amount due him or her from the payment received, not later than 15 days after receipt of each progress payment or final retention

payment. If the prime design professional disputes in good faith any portion of the amount due, he or she may withhold from the payment an amount not to exceed 150 percent of the disputed amount. The disputed amount withheld shall not be subject to any penalty authorized by this section.

(b) If any amount is wrongfully withheld or is not timely paid in violation of this section, the sub consultant design professional shall be entitled to a penalty of 1 1/2 percent of the improperly withheld amount, in lieu of any interest otherwise due, per month, for each month that payment is not made. In any action for the collection of amounts withheld in violation of this section, the prevailing party shall be entitled to his or her reasonable attorney's fees and costs.

(c) The penalty described in subdivision (b) shall be separate from, and in addition to, the design professional's liens provided by Chapter 3 (commencing with Section 8300) of Title 2 of Part 6 of Division 4, mechanics liens provided by Chapter 4 (commencing with Section 8400) of Title 2 of Part 6 of Division 4, and stop payment notices on public works provided by Chapter 4 (commencing with Section 9350) of Title 3 of Part 6 of Division 4.

(d) None of the rights or obligations created by this section between prime design professionals and sub consultant design professionals shall apply to construction loan funds held by a lender pursuant to a construction loan agreement.

For purposes of this section:

"Public agency" means the state, any county, any city, any city and county, any district, any public authority, any public agency, any municipal corporation, or other political subdivision or political corporation of the state.

"Design professional" means a person licensed as an architect pursuant to Chapter 3 (commencing with Section 5500) of Division 3 of the Business and Professions Code, registered as a professional engineer pursuant to Chapter 7 (commencing with Section 6700) of Division 3 of the Business and Professions Code, or licensed as a land surveyor pursuant to Chapter 15 (commencing with Section 8700) of Division 3 of the Business and Professions Code.

"Prime design professional" means a design professional having a written contract directly with the public agency.

"Sub consultant design professional" means a design professional having a written contract with a prime design professional.

(Amended by Stats. 2010, Ch. 697, Sec. 19. (SB 189). Effective January 1, 2011. Operative July 1, 2012, by Sec. 105 of Ch. 697.)

14 of 17

**3322**. (a) (1) A broker of construction trucking services shall pay all transportation charges submitted by a motor carrier of property in dump truck equipment by the 25th day following the last day of the calendar month in which the transportation was performed, if the charges, including all necessary documentation, are submitted by the fifth day following the last day of the calendar month in which the transportation was performed. If there is a good faith dispute over a portion of the charges claimed, the broker may withhold payment of an amount not to exceed 150 percent of the estimated cost of the disputed amount.

(2) A broker who violates paragraph (1) shall pay to the motor carrier of property in dump truck equipment a penalty of 2 percent per month on the improperly withheld amount.

In an action for the collection of moneys not paid in accordance with paragraph (1), the prevailing party shall be entitled to his or her attorney's fees and costs.

(b) For purposes of subdivision (a), the following definitions apply:

A "broker of construction trucking services" means any person, excluding a licensed contractor, that, as a principal or agent, arranges for transportation services to be provided by an independent contractor motor carrier of property in dump truck equipment and who is responsible for paying the transportation charges of the motor carrier.

A "motor carrier of property in dump truck equipment" means a motor carrier of property permitted by the Department of Motor Vehicles that hauls any type of construction commodity or material in dump truck equipment.

(c) Subdivision (a) only applies if a motor carrier of property is in compliance with Division 14.85 (commencing with Section 36000) of the Vehicle Code at the time the dump truck transportation work is performed.

(Added by Stats. 2004, Ch. 518, Sec. 1. Effective January 1, 2005.)

### Differences between Fraud and Breach of Contract

Fraud actions and breach of contract actions are close conceptual cousins of one another, but, importantly, if a breach of contract claim is brought on the same facts as a fraud claim, the two cannot be simultaneously filed.
**Most breach of contract actions are actually quite simple at their core.  The plaintiff must prove the existence of a contract, the breach of said contract, and that he or she suffered damages as a result of breach.**
To succeed on a claim of fraud, however, the plaintiff must prove that the defendant misrepresented the facts (and/or their intentions), plaintiff relied on that misrepresentation, and that plaintiff has suffered damages as a result of said reliance. When a plaintiff is coaxed into entering a contract with a defendant based on these misrepresentations, it is sometimes known as "fraudulent inducement."

15 of 17

**WHEREFORE, Plaintiff Ryan McCoy** demands judgment and pray for the following relief, jointly and severally, against **defendants Michael Noak & Jessica Casey & Juliet Smalls**:

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorney's fees and the costs and disbursements of this action; and

d. Damages as appears just and proper according to the **Fraud, misrepresentation under code of civil procedure § 338, 33 U.S. Code § 931. Penalty for misrepresentation, breach of the contract and damages sec 3300 US civil code– CIV DIVISION 4. GENERAL PROVISIONS [3274 - 9566] ( Heading of Division 4 amended by Stats. 1988, Ch. 160, Sec. 16. ) PART 1. RELIEF [3274 - 3428] ( Part 1 enacted 1872. ) TITLE 2. COMPENSATORY RELIEF [3281 - 3360] ( Title 2 enacted 1872. ) CHAPTER 2. The measure of Damages [[3300.] - 3360] ( Chapter 2 enacted 1872. ) ARTICLE 1. Damages for Breach of Contract [[3300.] - 3322] ( Article 1 enacted 1872.**

## PLAINTIFFS' VERIFICATION:

**Whereof,** I **Ryan McCoy** do hereby verify on oath that whatever been stated from paragraph # 1 to 21 are true and correct to best of my knowledge and all counts and legal paragraph are true and accurate to the best of my information.

*Ryan McCoy*

9/16/19

16 of 17

Aloha Your Honor,

1  
2    Due to the nature of the lawsuit, i had to flee the country
3    to mexico to live off the crumbs that i still have left from
4    my inheritance that Micheale Noak aka "Brother Polight"
5    and his two wives scammed me for.

6    Michael was well aware of my state of homelessness when
7    i recived my fathers life insurance, he knew i was alone and
8    vunerable, scared of going back to poverty, he assured me
9    that he would make sure i would never experience that again
10   if i invested in his finacial mentorship program. Well
11   in a matter of 3 months Michael used Lieg intimidation,
12   mind control to scam me out of 110K thosand dollares.
13   I ended up Being homless in L.A. making michael well
14   aware of my situation, he consistenly promised i will get
15   my money Back, while he lived a High class Hollywood
16   lifestyle with his wives to show off on social media.
17   i had to sell my small stock investments and move to mexico
18   where i met my new girlfriend who is now pregnant.
19
20   Although i do have residency in Hawaii, i have no offial
21   mailing address there since ive Been living on the Beach
22   the past two years while i study computer programming.
23   i cannot afford to fly to Hawaii to check mail for my case,
24   i kindly ask if i can recive a response to my case By email.
25   So i can better at keeping up to date sooner. i put my
26   mexican mailing address, But that is only temporary
27   im not sure how long it would take for me to recive mail
28   from the U.S.                        Thank You and Aloha.

10/2/19
17 of 7

Evidence 9

# BrotherPOLIGHT.US

Receipt

907 Westwood Blvd.
Los Angeles CA 90024
United States
+1 347-455-3778
bp@brotherpolight.com

| | |
|---|---|
| Receipt number | **2348-3064** |
| Invoice number | **B2FBE60-0006** |
| Date paid | **January 26, 2019** |
| Payment method | **MasterCard** – 1916 |

**Paid by**
Ryan Mccoy
CryptoRootz@protonmail.com

# $3,200.00 paid on January 26, 2019

| Description | Qty | Unit price | Amount |
|---|---|---|---|
| Conscious Advisory | 1 | $3,200.00 | **$3,200.00** |
| | | Subtotal | $3,200.00 |
| | | **Amount paid** | **$3,200.00** |

**Questions?** Contact BrotherPOLIGHT.US at bp@brotherpolight.com or call at
+1 347-455-3778.

2348-3064 – Page 1 of 1

1 of 10

# BrotherPOLIGHT.US

Receipt

907 Westwood Blvd.
Los Angeles CA 90024
United States
+1 347-455-3778
bp@brotherpolight.com

| | |
|---|---|
| Receipt number | **2032-9542** |
| Invoice number | **B2FBE60-0003** |
| Date paid | **January 22, 2019** |
| Payment method | **MasterCard** – 1916 |

**Paid by**
Ryan Mccoy
CryptoRootz@protonmail.com

# $5,000.00 paid on January 22, 2019

| Description | Qty | Unit price | Amount |
|---|---|---|---|
| Conscious Advisory | 1 | $5,000.00 | **$5,000.00** |
| | | Subtotal | $5,000.00 |
| | | **Amount paid** | **$5,000.00** |

**Questions?** Contact BrotherPOLIGHT.US at bp@brotherpolight.com or call at
+1 347-455-3778.

2032-9542 – Page 1 of 1

2 of 10

# First Hawaiian Bank

# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708


Acct. #  82-678980

Page    2 of    19
Statement Period:  January 20, 2019 thru February 19, 2019

---

## ACCOUNT ACTIVITY - OTHER DEBITS

| Posting Date | Transaction Description | | | | Debit |
|---|---|---|---|---|---|
| 01/22/19 | Debit Card | | | | 30.00 |
| | 540404498566191 | | | | |
| | HANZAWAS VARIETY STORE | HAIKU | HI | | |
| 01/22/19 | Debit Card | | | | 407.15 |
| | 540404498566191 | | | | |
| | HOTELS.COM155128258322 | HOTELS.COM | WA | | |
| 01/22/19 | Debit Card | | | | 425.00 |
| | 540404498566191 | | | | |
| | SQC*DESMOND T JENKI | 4153753176 | . CA | | |
| 01/22/19 | Debit Card | | | | 458.08 |
| | 540404498566191 | | | | |
| | KIMOS RENT A CAR INC | KAHULUI | HI | | |
| 01/22/19 | Debit Card | | | | 604.31 |
| | 540404498566191 | | | | |
| | HOTELS.COM155128127326 | HOTELS.COM | WA | | |
| 01/22/19 | Debit Card | | | | 1,059.76 |
| | 540404498566191 | | | | |
| | HOTELS.COM155153630462 | HOTELS.COM | WA | | |
| 01/22/19 | POS DEBIT | | | | 3.84 |
| | 540404498566191 | | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R | KIHEI | HI | | |
| 01/22/19 | POS DEBIT | | | | 6.24 |
| | 540404498566191 | | | | |
| | PARPAC - PIILANI PARPAC - PIILANI | KIHEI | HI | | |
| 01/22/19 | POS DEBIT | | | | 6.55 |
| | 540404498566191 | | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R | KIHEI | HI | | |
| 01/22/19 | POS DEBIT | | | | 9.36 |
| | 540404498566191 | | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R | KIHEI | HI | | |
| 01/22/19 | POS DEBIT | | | | 14.36 |
| | 540404498566191 | | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R | KIHEI | HI | | |
| 01/22/19 | POS DEBIT | | | | 20.08 |

Member FDIC

4 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

| Posting Date | Transaction Description | | | | | Debit |
|---|---|---|---|---|---|---|
| | 540404498566191 | | | | | |
| | HAWAIIAN MOONS | 2411 SOUTH KIHEI R | | KIHEI | HI | |
| 01/22/19 | POS DEBIT | | | | | 468.23 |
| | 540404498566191 | | | | | |
| | Wal-Mart Store | 3290 WAL-SAMS | | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | | 962.61 |
| | 540404498566191 | | | | | |
| | WAL-MART #3290 | Wal-Mart Store | | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | | 1,720.00 |
| | 540404498566191 | | | | | |
| | WAL-MART #3290 | 101 PAKAULA STREET | | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | | 1,816.00 |
| | 540404498566191 | | | | | |
| | WAL-MART #3290 | Wal-Mart Store | | KAHULUI | HI | |
| 01/23/19 | Debit Card | | | | | 5,000.00 |
| | 540404498566191 | | | | | |
| | BROTHER POLIGHT APP | 13474553778 | | CA | | |
| 01/23/19 | POS DEBIT | | | | | 10.38 |
| | 540404498566191 | | | | | |
| | Wal-Mart Store | 3290 WAL-SAMS | | KAHULUI | HI | |
| 01/23/19 | POS DEBIT | | | | | 42.12 |
| | 540404498566191 | | | | | |
| | AIM KAHULUI | 50 PAKAULA ST | | KAHULUI | HI | |
| 01/23/19 | POS DEBIT | | | | | 88.54 |
| | 540404498566191 | | | | | |
| | VESTA   AT T P   VESTA   AT T PREPA | | | PORTLAND | OR | |
| 01/24/19 | DEBIT CARD RECURRING | | | | | 14.95 |
| | 1ST HAWAIIAN BK  DEBIT CARD 012319 | | | | | |
| | 85130749022700003496800 540404498566191 | | | | | |
| | DASHBOARDHOSTING, LLC-  R 954-755-7338 | | | FL | | |
| 01/24/19 | Debit Card | | | | | 146.26 |
| | 540404498566191 | | | | | |
| | HOTELS.COM155212654137 | HOTELS.COM | | WA | | |
| 01/24/19 | Debit Card | | | | | 246.24 |
| | 540404498566191 | | | | | |
| | HOTELS.COM155212879183 | HOTELS.COM | | WA | | |
| 01/24/19 | Debit Card | | | | | 400.00 |
| | 540404498566191 | | | | | |
| | SQC*DESMOND T JENKI | 4153753176 | | CA | | |
| 01/24/19 | Debit Card | | | | | 450.00 |
| | 540404498566191 | | | | | |
| | SQC*NINAARRARI | 4153753176 | | CA | | |



Member FDIC

5 of 10

# TOTALLY FREE CHECKING

**First Hawaiian Bank**

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708

Acct. #  82-678980

Page   4 of   19
Statement Period:  January 20, 2019 thru February 19, 2019

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 01/24/19 | Debit Card | | | 959.75 |
| | 540404498566191 | | | |
| | HOTELS.COM155212506279 | HOTELS.COM | WA | |
| 01/24/19 | Debit Card | | | 2,271.30 |
| | 540404498566191 | | | |
| | HOTELS.COM155213076765 | HOTELS.COM | WA | |
| 01/24/19 | Debit Card | | | 3,000.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | |
| 01/24/19 | Debit Card | | | 5,000.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | |
| 01/24/19 | Funds Transfer | | | 2,000.00 |
| | UPHOLD HQ INC     Payments | 012419 | | |
| 01/25/19 | Debit Card | | | 10.49 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS | PAIA | HI | |
| 01/25/19 | Debit Card | | | 20.23 |
| | 540404498566191 | | | |
| | CheapTix*7407525859677 | www.ctix.info | WA | |
| 01/25/19 | Debit Card | | | 327.67 |
| | 540404498566191 | | | |
| | HOTELS.COM155246009249 | HOTELS.COM | WA | |
| 01/25/19 | Debit Card | | | 2,000.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | |
| 01/25/19 | OD FEE - PAY | | | 30.00 |
| 01/28/19 | Debit Card | | | 223.60 |
| | 540404498566191 | | | |
| | DELTA  00623551658940 | DELTA.COM | CA | |
| 01/28/19 | Debit Card | | | 304.30 |
| | 540404498566191 | | | |
| | AMERICAN 00172788262356 | BELLEVUE | WA | |
| 01/28/19 | Debit Card | | | 1,499.41 |
| | 540404498566191 | | | |
| | HOTELS.COM155286662024 | HOTELS.COM | WA | |



Member FDIC

6 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 01/28/19 | POS DEBIT | | | 758.00 |
| | 540404498566191 | | | |
| | Wal-Mart Store   3290 WAL-SAMS | KAHULUI | HI | |
| 01/28/19 | Funds Transfer | | | 2,000.00 |
| | UPHOLD HQ INC     Payments   012819 | | | |
| 01/29/19 | Debit Card | | | 4.43 |
| | 540404498566191 | | | |
| | KAHULUI | MAKAWAO | HI | |
| 01/29/19 | Debit Card | | | 5.00 |
| | 540404498566191 | | | |
| | SQ *BLUEPILLAR44 | 877-417-4551 | NY | |
| 01/29/19 | Debit Card | | | 5.00 |
| | 540404498566191 | | | |
| | SQC*RICHARD MERRITT | 4153753176 | CA | |
| 01/29/19 | Debit Card | | | 15.09 |
| | 540404498566191 | | | |
| | COCONUTS FISH CAFE KIH | KIHEI | HI | |
| 01/29/19 | Debit Card | | | 25.30 |
| | 540404498566191 | | | |
| | 76 - CARL'S MAALAEA | WAILUKU | HI | |
| 01/29/19 | Debit Card | | | 50.00 |
| | 540404498566191 | | | |
| | CheapTix*7408347937861 | www.ctix.info | WA | |
| 01/29/19 | Debit Card | | | 71.00 |
| | 540404498566191 | | | |
| | CheapTix*7408347937861 | www.ctix.info | WA | |
| 01/29/19 | Debit Card | | | 300.00 |
| | 540404498566191 | | | |
| | SQC*JOHNATHAN MCNEI | 4153753176 | CA | |
| 01/29/19 | Debit Card | | | 350.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 01/29/19 | Debit Card | | | 425.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 01/29/19 | Debit Card | | | 425.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 01/29/19 | Debit Card | | | 732.46 |
| | 540404498566191 | | | |
| | HOTELS.COM155341613004 | HOTELS.COM | WA | |
| 01/29/19 | Debit Card | | | 767.34 |
| | 540404498566191 | | | |
| | HOTELS.COM155340239263 | HOTELS.COM | WA | |

Member FDIC

7 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708

Acct. # 82-678980

Page    6 of    19
Statement Period:  January 20, 2019 thru February 19, 2019

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 01/29/19 | Debit Card | | | 3,200.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP    13474553778   CA | | | |
| 01/29/19 | POS DEBIT | | | 312.49 |
| | 540404498566191 | | | |
| | TARGET T- 100    TARGET T- 100 Hook   Kahului    HI | | | |
| 01/29/19 | OD FEE - PAY | | | 30.00 |
| 01/30/19 | Debit Card | | | 21.74 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS      PAIA      HI | | | |
| 01/30/19 | Debit Card | | | 192.30 |
| | 540404498566191 | | | |
| | AMERICAN 00123335877663   8004337300   TX | | | |
| 01/30/19 | Debit Card | | | 195.20 |
| | 540404498566191 | | | |
| | HOTELS.COM155399414678     HOTELS.COM   WA | | | |
| 01/30/19 | Debit Card | | | 807.54 |
| | 540404498566191 | | | |
| | HOTELS.COM155388850984     HOTELS.COM   WA | | | |
| 02/01/19 | POS DEBIT | | | 1,616.00 |
| | 540404498566191 | | | |
| | Wal-Mart Store   3290 WAL-SAMS      KAHULUI    HI | | | |
| 02/04/19 | POS DEBIT | | | 5.21 |
| | 540404498566191 | | | |
| | Wal-Mart Store   3290 WAL-SAMS      KAHULUI    HI | | | |
| 02/04/19 | POS DEBIT | | | 14.36 |
| | 540404498566191 | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R   KIHEI    HI | | | |
| 02/04/19 | POS DEBIT | | | 17.39 |
| | 540404498566191 | | | |
| | CHEVRON/LAHAINA   CHEVRON/LAHAINA PE   KAHULUI    HI | | | |
| 02/04/19 | POS DEBIT | | | 25.00 |
| | 540404498566191 | | | |
| | ABC #51 HAWAII   ABC #51 HAWAII      KIHEI    HI | | | |
| 02/04/19 | POS DEBIT | | | 42.80 |
| | 540404498566191 | | | |

Member FDIC

9 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| | MINIT STOP KIHEI 233 PIIKEA AVE | KIHEI | HI | |
| 02/04/19 | POS DEBIT | | | 81.19 |
| | 540404498566191 | | | |
| | PACSUN #0411    275 KAAHUMANU AVEN | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 95.80 |
| | 540404498566191 | | | |
| | WAL-MART #3290   101 PAKAULA STREET | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 114.54 |
| | 540404498566191 | | | |
| | SEARS ROEBUCK    275 WEST KAAHUMANU | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 135.37 |
| | 540404498566191 | | | |
| | VANS #0412    275 W KA'AHUMANU A | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 230.00 |
| | 540404498566191 | | | |
| | METROPCS MOBIL   METROPCS MOBILE | BELLEVUE | WA | |
| 02/04/19 | POS DEBIT | | | 1,000.00 |
| | 540404498566191 | | | |
| | PAYPAL *DIVNE    2211 North First S | San Jose | CA | |
| 02/04/19 | Funds Transfer | | | 500.00 |
| | UPHOLD HQ INC    Payments   020419 | | | |
| 02/05/19 | DEBIT CARD RECURRING | | | 5.48 |
| | 1ST HAWAIIAN BK  DEBIT CARD 020419 | | | |
| | 5542950903263778133207 540404498566191 | | | |
| | 000 DIGITALOCEAN.COM    R 6463978051    NY | | | |
| 02/05/19 | Debit Card | | | 7.06 |
| | 540404498566191 | | | |
| | JAMBA JUICE 1452 QSR    WAILUKU | HI | | |
| 02/05/19 | Debit Card | | | 21.06 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS    PAIA | HI | | |
| 02/05/19 | Debit Card | | | 113.16 |
| | 540404498566191 | | | |
| | KIMOS RENT A CAR INC    808-2806237 | HI | | |
| 02/05/19 | Debit Card | | | 137.68 |
| | 540404498566191 | | | |
| | HOTELS.COM155565992342    HOTELS.COM | WA | | |
| 02/05/19 | Debit Card | | | 241.81 |
| | 540404498566191 | | | |
| | HOTELS.COM155573859439    HOTELS.COM | WA | | |
| 02/05/19 | Debit Card | | | 241.81 |
| | 540404498566191 | | | |
| | HOTELS.COM155552614112    HOTELS.COM | WA | | |



Member FDIC

9 of 10

# First Hawaiian Bank
# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708


Acct. #  82-678980

Page   8 of   19
Statement Period:  January 20, 2019 thru February 19, 2019

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 02/05/19 | Debit Card | | | 279.18 |
| | 540404498566191 | | | |
| | AIRBNB * HM99CXZ28H | 415-800-5959 | CA | |
| 02/05/19 | Debit Card | | | 350.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 350.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 356.02 |
| | 540404498566191 | | | |
| | HOTELS.COM155539990619 | HOTELS.COM | WA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*NINAARRARI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*NINAARRARI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 591.20 |
| | 540404498566191 | | | |
| | BOUNTY MUSIC | KAHULUI | HI | |
| 02/05/19 | Debit Card | | | 3,000.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | |
| 02/05/19 | POS DEBIT | | | 14.81 |
| | 540404498566191 | | | |
| | SHELL Service    SHELL Service S | KAHULUI | HI | |
| 02/06/19 | Debit Card | | | 5.00 |
| | 540404498566191 | | | |
| | SQC*RICHARD MERRITT | 4153753176 | CA | |
| 02/06/19 | Debit Card | | | 16.57 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS | PAIA | HI | |



Member FDIC

# BrotherPOLIGHT.US

Receipt

907 Westwood Blvd.
Los Angeles CA 90024
United States
+1 347-455-3778
bp@brotherpolight.com

| | |
|---|---|
| Receipt number | **2032-9542** |
| Invoice number | **B2FBE60-0003** |
| Date paid | **January 22, 2019** |
| Payment method | **MasterCard** – 1916 |

**Paid by**
Ryan Mccoy
CryptoRootz@protonmail.com

# $5,000.00 paid on January 22, 2019

| Description | Qty | Unit price | Amount |
|---|---|---|---|
| Conscious Advisory | 1 | $5,000.00 | **$5,000.00** |
| | | Subtotal | $5,000.00 |
| | | **Amount paid** | **$5,000.00** |

**Questions?** Contact BrotherPOLIGHT.US at bp@brotherpolight.com or call at
+1 347-455-3778.

2032-9542 – Page 1 of 1

2 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

| Posting Date | Transaction Description | | | | Debit |
|---|---|---|---|---|---|
| | 540404498566191 | | | | |
| | HAWAIIAN MOONS | 2411 SOUTH KIHEI R | KIHEI | HI | |
| 01/22/19 | POS DEBIT | | | | 468.23 |
| | 540404498566191 | | | | |
| | Wal-Mart Store | 3290 WAL-SAMS | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | 962.61 |
| | 540404498566191 | | | | |
| | WAL-MART #3290 | Wal-Mart Store | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | 1,720.00 |
| | 540404498566191 | | | | |
| | WAL-MART #3290 | 101 PAKAULA STREET | KAHULUI | HI | |
| 01/22/19 | POS DEBIT | | | | 1,816.00 |
| | 540404498566191 | | | | |
| | WAL-MART #3290 | Wal-Mart Store | KAHULUI | HI | |
| 01/23/19 | Debit Card | | | | 5,000.00 |
| | 540404498566191 | | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | | |
| 01/23/19 | POS DEBIT | | | | 10.38 |
| | 540404498566191 | | | | |
| | Wal-Mart Store | 3290 WAL-SAMS | KAHULUI | HI | |
| 01/23/19 | POS DEBIT | | | | 42.12 |
| | 540404498566191 | | | | |
| | AIM KAHULUI | 50 PAKAULA ST | KAHULUI | HI | |
| 01/23/19 | POS DEBIT | | | | 88.54 |
| | 540404498566191 | | | | |
| | VESTA   AT T P | VESTA   AT T PREPA | PORTLAND | OR | |
| 01/24/19 | DEBIT CARD RECURRING | | | | 14.95 |
| | 1ST HAWAIIAN BK   DEBIT CARD 012319 | | | | |
| | 8513074902270000349680 540404498566191 | | | | |
| | DASHBOARDHOSTING, LLC-   R 954-755-7338 | | FL | | |
| 01/24/19 | Debit Card | | | | 146.26 |
| | 540404498566191 | | | | |
| | HOTELS.COM155212654137 | HOTELS.COM | WA | | |
| 01/24/19 | Debit Card | | | | 246.24 |
| | 540404498566191 | | | | |
| | HOTELS.COM155212879183 | HOTELS.COM | WA | | |
| 01/24/19 | Debit Card | | | | 400.00 |
| | 540404498566191 | | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | | |
| 01/24/19 | Debit Card | | | | 450.00 |
| | 540404498566191 | | | | |
| | SQC*NINAARRARI | 4153753176 | CA | | |

EQUAL HOUSING LENDER   Member FDIC

5 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708

Acct. #  82-678980

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 01/24/19 | Debit Card 540404498566191 HOTELS.COM155212506279 | HOTELS.COM | WA | 959.75 |
| 01/24/19 | Debit Card 540404498566191 HOTELS.COM155213076765 | HOTELS.COM | WA | 2,271.30 |
| 01/24/19 | Debit Card 540404498566191 BROTHER POLIGHT APP | 13474553778 | CA | 3,000.00 |
| 01/24/19 | Debit Card 540404498566191 BROTHER POLIGHT APP | 13474553778 | CA | 5,000.00 |
| 01/24/19 | Funds Transfer UPHOLD HQ INC    Payments | 012419 | | 2,000.00 |
| 01/25/19 | Debit Card 540404498566191 MANA HEALTH FOODS | PAIA | HI | 10.49 |
| 01/25/19 | Debit Card 540404498566191 CheapTix*7407525859677 | www.ctix.info | WA | 20.23 |
| 01/25/19 | Debit Card 540404498566191 HOTELS.COM155246009249 | HOTELS.COM | WA | 327.67 |
| 01/25/19 | Debit Card 540404498566191 BROTHER POLIGHT APP | 13474553778 | CA | 2,000.00 |
| 01/25/19 | OD FEE - PAY | | | 30.00 |
| 01/28/19 | Debit Card 540404498566191 DELTA    00623551658940 | DELTA.COM | CA | 223.60 |
| 01/28/19 | Debit Card 540404498566191 AMERICAN  00172788262356 | BELLEVUE | WA | 304.30 |
| 01/28/19 | Debit Card 540404498566191 HOTELS.COM155286662024 | HOTELS.COM | WA | 1,499.41 |

Member FDIC

6 of 10

**First Hawaiian Bank**

# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708

Acct. #  82-678980

Page    6 of    19
Statement Period:  January 20, 2019 thru February 19, 2019

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---:|
| 01/29/19 | Debit Card | | | 3,200.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP        13474553778 | CA | | |
| 01/29/19 | POS DEBIT | | | 312.49 |
| | 540404498566191 | | | |
| | TARGET T- 100     TARGET T- 100 Hook | Kahului | HI | |
| 01/29/19 | OD FEE - PAY | | | 30.00 |
| 01/30/19 | Debit Card | | | 21.74 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS          PAIA | HI | | |
| 01/30/19 | Debit Card | | | 192.30 |
| | 540404498566191 | | | |
| | AMERICAN  00123335877663    8004337300 | TX | | |
| 01/30/19 | Debit Card | | | 195.20 |
| | 540404498566191 | | | |
| | HOTELS.COM155399414678      HOTELS.COM | WA | | |
| 01/30/19 | Debit Card | | | 807.54 |
| | 540404498566191 | | | |
| | HOTELS.COM155388850984      HOTELS.COM | WA | | |
| 02/01/19 | POS DEBIT | | | 1,616.00 |
| | 540404498566191 | | | |
| | Wal-Mart Store   3290 WAL-SAMS | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 5.21 |
| | 540404498566191 | | | |
| | Wal-Mart Store   3290 WAL-SAMS | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 14.36 |
| | 540404498566191 | | | |
| | HAWAIIAN MOONS   2411 SOUTH KIHEI R | KIHEI | HI | |
| 02/04/19 | POS DEBIT | | | 17.39 |
| | 540404498566191 | | | |
| | CHEVRON/LAHAINA  CHEVRON/LAHAINA PE | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | 25.00 |
| | 540404498566191 | | | |
| | ABC #51 HAWAII   ABC #51 HAWAII | KIHEI | HI | |
| 02/04/19 | POS DEBIT | | | 42.80 |
| | 540404498566191 | | | |

Member FDIC

7 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

| Posting Date | Transaction Description | | | | Debit |
|---|---|---|---|---|---|
| | MINIT STOP KIHEI 233 PIIKEA AVE | | KIHEI | HI | |
| 02/04/19 | POS DEBIT | | | | 81.19 |
| | 540404498566191 | | | | |
| | PACSUN #0411 | 275 KAAHUMANU AVEN | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | | 95.80 |
| | 540404498566191 | | | | |
| | WAL-MART #3290 | 101 PAKAULA STREET | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | | 114.54 |
| | 540404498566191 | | | | |
| | SEARS ROEBUCK | 275 WEST KAAHUMANU | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | | 135.37 |
| | 540404498566191 | | | | |
| | VANS #0412 | 275 W KA'AHUMANU A | KAHULUI | HI | |
| 02/04/19 | POS DEBIT | | | | 230.00 |
| | 540404498566191 | | | | |
| | METROPCS MOBIL | METROPCS MOBILE | BELLEVUE | WA | |
| 02/04/19 | POS DEBIT | | | | 1,000.00 |
| | 540404498566191 | | | | |
| | PAYPAL *DIVNE | 2211 North First S | San Jose | CA | |
| 02/04/19 | Funds Transfer | | | | 500.00 |
| | UPHOLD HQ INC | Payments | 020419 | | |
| 02/05/19 | DEBIT CARD RECURRING | | | | 5.48 |
| | 1ST HAWAIIAN BK  DEBIT CARD 020419 | | | | |
| | 5542950903263778133207 540404498566191 | | | | |
| | 000 DIGITALOCEAN.COM | R 6463978051 | | NY | |
| 02/05/19 | Debit Card | | | | 7.06 |
| | 540404498566191 | | | | |
| | JAMBA JUICE 1452 QSR | WAILUKU | HI | | |
| 02/05/19 | Debit Card | | | | 21.06 |
| | 540404498566191 | | | | |
| | MANA HEALTH FOODS | PAIA | HI | | |
| 02/05/19 | Debit Card | | | | 113.16 |
| | 540404498566191 | | | | |
| | KIMOS RENT A CAR INC | 808-2806237 | HI | | |
| 02/05/19 | Debit Card | | | | 137.68 |
| | 540404498566191 | | | | |
| | HOTELS.COM155565992342 | HOTELS.COM | WA | | |
| 02/05/19 | Debit Card | | | | 241.81 |
| | 540404498566191 | | | | |
| | HOTELS.COM155573859439 | HOTELS.COM | WA | | |
| 02/05/19 | Debit Card | | | | 241.81 |
| | 540404498566191 | | | | |
| | HOTELS.COM155552614112 | HOTELS.COM | WA | | |



Member FDIC

8 of 10

First Hawaiian Bank

# TOTALLY FREE CHECKING

RYAN BRANTLEY MCCOY
45 MAI PL
HAIKU HI 96708

Acct. # 82-678980

| Posting Date | Transaction Description | | | Debit |
|---|---|---|---|---|
| 02/05/19 | Debit Card | | | 279.18 |
| | 540404498566191 | | | |
| | AIRBNB * HM99CXZ28H | 415-800-5959 | CA | |
| 02/05/19 | Debit Card | | | 350.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 350.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 356.02 |
| | 540404498566191 | | | |
| | HOTELS.COM155539990619 | HOTELS.COM | WA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*NINAARRARI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*NINAARRARI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 450.00 |
| | 540404498566191 | | | |
| | SQC*DESMOND T JENKI | 4153753176 | CA | |
| 02/05/19 | Debit Card | | | 591.20 |
| | 540404498566191 | | | |
| | BOUNTY MUSIC | KAHULUI | HI | |
| 02/05/19 | Debit Card | | | 3,000.00 |
| | 540404498566191 | | | |
| | BROTHER POLIGHT APP | 13474553778 | CA | |
| 02/05/19 | POS DEBIT | | | 14.81 |
| | 540404498566191 | | | |
| | SHELL Service    SHELL Service S | KAHULUI | HI | |
| 02/06/19 | Debit Card | | | 5.00 |
| | 540404498566191 | | | |
| | SQC*RICHARD MERRITT | 4153753176 | CA | |
| 02/06/19 | Debit Card | | | 16.57 |
| | 540404498566191 | | | |
| | MANA HEALTH FOODS | PAIA | HI | |



Member FDIC

9 of 10



